**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RALPH A. PRUNELLA<br>ADRIAN A. BUTLER<br>DANIEL D. JARVIS<br>GERMAN F. OVIEDO<br>JEREMIAH P. WHOLEY<br>ANTHONY F. ALLIA<br>ROBERTO APONTE<br>VICTOR BAPTISTE<br>SERGEY S. BYCHKOV<br>DOMINICK M. COSTAGLIOLA<br>THOMAS DINARDO<br>CARLOS M. FERNANDEZ<br>BRIAN FOGMEG<br>PHILLIP J. GOODWIN<br>JAMES C. LOIACONO<br>MICHAEL P. MCGRORY<br>WILLIAM MONTANO<br>MICHAEL P. O'CONNOR<br>CHARLES E. PICCIOTTO<br>JOSEPH D. PORTER<br>VERNON O. RAMSAY<br>JOSEPH A. TLOCZKOWSKI,<br><br>      Plaintiffs,<br><br>v.<br><br>NEW YORK CITY TRANSIT AUTHORITY,<br><br>      Defendant. | Case No. _____<br><br>(Jury Trial Demanded) |

**COMPLAINT**

Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP and Spivak Lipton LLP, for their Complaint against The New York City Transit Authority ("Defendant") state as follows:

## INTRODUCTION

1. Plaintiffs are current and former employees of the Defendant, New York City Transit Authority, also branded as the MTA New York City Transit Authority ("Defendant" or "NYCT" or "MTA"), who work or have worked in the position of "High Pressure Plant Tender" ("HPPT"). Plaintiffs bring this action against Defendant for back pay, liquidated damages, attorneys fees and costs, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the Defendant's willful and unlawful violations of federal law complained of herein.

2. Plaintiffs bring this action against Defendant as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation in accordance with the FLSA. The Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant suffered or permitted Plaintiffs to perform uncompensated overtime work before and after their paid shifts. Plaintiffs are also similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant fails to properly calculate the regular rate of pay upon which Plaintiffs' overtime rate is based and fails to pay overtime compensation in a timely manner.

## PARTIES

3. Plaintiffs, all of whom are listed in Exhibit A, have each given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The written consent forms attached as Exhibit A set forth each Plaintiff's name and address.

4. Each of the Plaintiffs in this action, while employed by Defendant, has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

5. Defendant NYCT is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency and "employer" within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). Defendant NYCT is a public benefit corporation pursuant to N.Y. Pub. Auth. Law § 1200 et seq. NYCT has a principal office and place of business located at 130 Livingston Plaza, Brooklyn, NY 11201.

6. Defendant NYCT operates bus, subway, and other rail transit systems as part of North America's largest transportation network. NYCT has a daily ridership of over 8 million, with over 2.5 billion riders annually.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

9. Plaintiffs are, and have been at all times material, employed by Defendant within the last three years and continuing to date, in the position of "High Pressure Plant Tender" ("HPPT"), also referred to as "Boiler Tenders," whose principal job duties, like the principal job duties of all others similarly situated, include but are not limited to: operating, monitoring, tending, maintaining, and repairing oil or gas fired high pressure boilers and related equipment, as well as other heating, ventilation, air conditioning, and/or related auxiliary systems that service Defendant's many buildings and offices.

10. For example, at all times material, Plaintiff Ralph Prunella has worked for Defendant as a HPPT and has been assigned to the 207th Street Yard in Manhattan, tasked with performing the principal activities of a HPPT, including tending to the steam heating and ventilation systems for the MTA car barn at that location. For further example, at all times material, until his retirement on December 18, 2021, Plaintiff German Oviedo worked for Defendant as a HPPT and was assigned to the Rail Control Center located at 354 West 54th Street in Manhattan, tasked with performing the principal activities of a HPPT, including tending to the steam heating and ventilation systems for the MTA facility at that location. For further example, at all times material, Plaintiff Adrian Butler has worked for Defendant as a HPPT and has been assigned to MTA locations including Defendant's Headquarters at 130 Livingston Plaza in Brooklyn, tasked with performing the principal activities of a HPPT, including tending to the steam heating and ventilation systems for the MTA facility at that location. For further example, at all times material, Plaintiff Daniel Jarvis has worked for Defendant as a HPPT and has been assigned to MTA locations including the Rail Control Center, located at 354 W 54th Street, in Manhattan, tasked with performing the principal activities of a HPPT, including tending to the HVAC systems for the MTA facility at that location. For further example, at all times material, Plaintiff Jeremiah Wholey has worked for Defendant as a HPPT and has been assigned to MTA locations including the 207th Street Train Yard, in Manhattan, tasked with performing the principal activities of a HPPT, including tending to the steam heating and ventilation systems for the MTA facility at that location. As HPPTs, Plaintiffs and those similarly situated perform the same or similar principal duties for Defendant, including the foregoing and those duties alleged in Paragraph 9 above.

11. While working as a HPPT, Plaintiffs and all others similarly situated are regularly scheduled to work 40 hours a week. Specifically, each week, they are regularly scheduled to work

five eight-hour shifts, for example from 6:00 a.m. to 2:00 p.m. ("Day Watch"), from 2:00 p.m. to 10:00 p.m. ("Afternoon Watch"), or 10:00 p.m. to 6:00 a.m. ("Night Watch").

12. Because of the delicate and dangerous nature of high-pressure plants, Defendant requires that the plants be attended 24 hours a day, and seven days a week, while in operational status. Thus, when assigned to a post at a particular location, Plaintiffs and all those similarly situated are not permitted to leave their posts without proper relief from the oncoming HPPT as the plant can never be left unattended.

13. Additionally, pursuant to Defendant's uniformly applicable workplace policies and practices, HPPTs must arrive prior to the start of each scheduled shift in order to perform their principal activities, including performing a walkthrough and/or information exchange to ensure they are fully aware of the state of the plant, any issues that arose during the last shift, or any other pertinent information from the on-duty HPPT. Likewise, at the end of their shifts, even if the next shift has arrived, HPPTs must remain on their posts performing their principal job duties until the scheduled end of their shift and the information exchange is completed with the relieving HPPT.

14. Plaintiffs have also been instructed that they may not leave their posts until the scheduled end of their shift.

15. As a result of these and other of Defendants' uniform workplace policies and practices, Plaintiffs and all those similarly situated routinely work in excess of their regularly scheduled shifts, such that they work overtime in excess of 40 hours in a workweek. However, the Defendant fails to compensate Plaintiffs and all others similarly situated for all hours worked in excess of 40 in a workweek at a rate of one and one-half times their regular rate of pay. Specifically, the Defendant fails to compensate Plaintiffs and all others similarly situated for hours worked before the start of their scheduled shifts and after the end of their shifts.

16. While working as a HPPT, Plaintiffs and all others similarly situated may be compensated for hours worked over 40 in a workweek *if* the overtime hours were pre-approved by Defendant. However, when the Defendant compensates Plaintiffs and all others similarly situated for such hours, it systemically fails to pay Plaintiffs and all others similarly situated for this overtime work at the correct regular rate of pay.

### *Defendant's Fair Labor Standards Act Violations are Willful*

17. Defendant captures the work hours of HPPTs using a paper timekeeping system and an electronic card swipe system ("Kronos"), including time spent working before their scheduled shift begins and/or after the end of their shifts.

18. Defendant tracks Plaintiffs' work on a minute-by-minute basis using Kronos software and swipe cards. However, Defendant does not pay HPPTs on a minute-by-minute basis. This is because when Defendant implemented its Kronos system, it elected not to pay HPPTs for all their recorded time by default. Instead, Defendant pays HPPTs for their scheduled hours by default, knowingly leaving their *recorded* pre-shift and post-shift work time uncompensated.

19. Plaintiffs' timekeeping and payroll data is in Defendant's exclusive possession and is not readily available to Plaintiffs and other HPPTs.

20. Defendant knowingly permits, and in fact requires, that HPPTs perform off-the-clock work each and every shift assigned on a 24-hour shift rotation. That is because each 24-hour shift rotation is made up of three, eight-hour shifts, without any scheduled overlap. Even though Defendant has scheduled and pays each HPPT assigned to the schedule for only eight hours, without any paid overlap, it also requires each HPPT to perform a careful, time-consuming shift exchange with the HPPT who is relieved at the start of the shift, as well as with the HPPT who is relieved at the end of the shift. During this mandatory shift changeover, both HPPTs perform their

primary job activity of checking and maintaining their assigned plant/system. Although Defendant requires both HPPTs to be present for this mandatory shift changeover, by policy, it pays only one.

21. Upon information and belief, Defendant failed to seek advice from the United States Department of Labor regarding whether its pay policies and practices comply with the FLSA.

22. Plaintiffs, individually and via their labor association, American Federation of State, County, and Municipal Employees ("AFSCME") Local 983, have repeatedly complained to Defendant about its failure to properly compensate its employees for overtime work. For example, Local 983 complained to Defendant for over a year about missing pay for hours of overtime work paid only at the straight-time rate before Defendant took meaningful action. When Defendant finally issued partial payment of the outstanding overtime debt to Plaintiffs and other employees on February 2, 2022, and March 17, 2022, the payments were months and years overdue. To date, Defendant has still failed to pay liquidated damages corresponding to the overtime debt in question.

### *Uncompensated Work Performed by Plaintiffs and All Others Similarly Situated*

23. While working as HPPTs, Plaintiffs and all others similarly situated routinely work over 40 hours a week. Plaintiffs are scheduled to work five (5) shifts of eight (8) hours in length each week. Thus, Plaintiffs and all others similarly situated are scheduled to perform a minimum of 40 hours of work per workweek.

24. Plaintiffs and all others similarly situated frequently work overtime in addition to their regular 40 hours of work per week performing their principal job duties, for which they are not compensated. Specifically, they routinely work additional hours before the official start time of their regularly scheduled shifts and after the end of their shifts, all without compensation. This

pre-shift and post-shift work causes Plaintiffs and all others similarly situated to work in excess of 40 hours in each week because they are scheduled to work 40 hours per workweek even without this additional overtime. As such, Plaintiffs and all others similarly situated regularly work additional uncompensated hours which are in excess of 40 in a workweek.

25. Plaintiffs and all others similarly situated begin work before the official start time of their shifts and/or stop working after the end of their official shifts. Such pre-shift and post-shift work includes, but not limited to, the tasks listed in Paragraphs 9, 10 and 13.

26. For example, Plaintiff Prunella routinely works over 40 hours in a workweek at his assigned location at 207th Street Train Yard, in Manhattan. When Plaintiff Prunella works over 40 hours, Defendant fails to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 9, 10 and 13 before the official start of his scheduled 8-hour shift and/or after the end of his 8-hour scheduled shift. Specifically, for example, Defendant failed to compensate Plaintiff Prunella for the overtime work it suffered or permitted him to perform during the week of May 8 to 14, 2022, in which he worked his full complement of regularly scheduled shifts, totaling 40 hours of scheduled work time, as well as at least approximately 15-30 minutes of additional work performing his principal work activities (e.g., as described in Paragraphs 9, 10 and 13 above) before the start of each of his scheduled shifts. In that week and regularly in the other weeks within the recovery period and ongoing, Plaintiff Prunella was not compensated for at least approximately one hour and 15 minutes and as much as 2 hours and 30 minutes, approximately, of additional overtime work beyond his scheduled shift.

27. For example, until his retirement on December 18, 2021, Plaintiff Oviedo routinely worked over 40 hours in a workweek at his assigned location at the Rail Control Center, located at 354 West 54th Street, in Manhattan and, previously, at his other assigned job locations with

8

Defendant. When Plaintiff Oviedo worked over 40 hours, Defendant failed to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 9, 10 and 13 before the official start of his scheduled 8-hour shift and/or after the end of his 8-hour scheduled shift. Specifically, for example, Defendant failed to compensate Plaintiff Oviedo for the overtime work it suffered or permitted him to perform during the week of December 12 to 18, 2021, in which he worked his full complement of regularly scheduled shifts, totaling 40 hours of scheduled work time (five shifts of 6:00 a.m. to 2:00 p.m.), as well as at least approximately 30-40 minutes of additional work performing his principal work activities (e.g., as described in Paragraphs 9, 10 and 13 above) before the start of each of his scheduled shifts. In that week and regularly in the other weeks within the recovery period, Plaintiff Oviedo was not compensated for at least 2 hours and 30 minutes and up to at least 3 hours and 20 minutes, approximately, of additional overtime work beyond his scheduled shifts.

28. For example, Plaintiff Butler routinely works over 40 hours in a workweek at his assigned location at Defendant's Headquarters at 130 Livingston Plaza in Brooklyn and, previously, at his other assigned job locations with Defendant. When Plaintiff Butler works over 40 hours, Defendant fails to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 9, 10 and 13 before the official start of his scheduled 8-hour shift and/or after the end of his 8-hour scheduled shift. Specifically, for example, Defendant failed to compensate Plaintiff Butler for the overtime work it suffered or permitted him to perform during the week of May 22 to 28, 2022, in which he worked his full complement of regularly scheduled shifts, totaling 40 hours of scheduled work time (five shifts of 10:00 p.m. to 6:00 a.m.), as well as at least approximately 15-30 minutes of additional work performing his principal work activities (e.g., as described in Paragraphs 9, 10 and 13 above) before the start of

each of his scheduled shifts. In that week and regularly in the other weeks within the recovery period and ongoing, Plaintiff Butler was not compensated for at least approximately one hour and 15 minutes and as much as 2 hours and 30 minutes, approximately, of additional overtime work beyond his scheduled shift.

29. For example, Plaintiff Jarvis routinely works over 40 hours in a workweek at his assigned location at the Rail Control Center, located at 354 West 54th Street, in Manhattan and, previously, at his other assigned job locations with Defendant. When Plaintiff Jarvis works over 40 hours, Defendant fails to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 9, 10 and 13 before the official start of his scheduled 8-hour shift and/or after the end of his 8-hour scheduled shift. Specifically, for example, Defendant failed to compensate Plaintiff Jarvis for the overtime work it suffered or permitted him to perform during the week of May 22 to 28, 2022, in which he worked his full complement of regularly scheduled shifts, totaling 40 hours of scheduled work time (five shifts of 6:00 a.m. to 2:00 p.m.), as well as at least approximately 30-40 minutes of additional work performing his principal work activities (e.g., as described in Paragraphs 9, 10 and 13 above) before the start of each of his scheduled shifts. In that week and regularly in the other weeks within the recovery period, Plaintiff Jarvis was not compensated for at least approximately 2 hours and 30 minutes and up to at least 3 hours and 20 minutes, approximately, of additional overtime work beyond his scheduled shifts.

30. For example, Plaintiff Wholey routinely works over 40 hours in a workweek at his assigned location at the 207th Street Train Yard, in Manhattan and, previously, at his other assigned job locations with Defendant. When Plaintiff Wholey works over 40 hours, Defendant fails to compensate him for all of his work time, including but not limited to time spent performing

tasks enumerated in Paragraphs 9, 10 and 13 before the official start of his scheduled 8-hour shift and/or after the end of his 8-hour scheduled shift. Specifically, for example, Defendant failed to compensate Plaintiff Wholey for the overtime work it suffered or permitted him to perform during the week of April 10 to 16, 2022, in which he worked his full complement of regularly scheduled shifts, totaling 40 hours of scheduled work time (five shifts of 10:00 p.m. to 6:00 a.m.), as well as at least approximately 30-45 minutes of additional work performing his principal work activities (e.g., as described in Paragraphs 9, 10 and 13 above) before the start of each of his scheduled shifts. In that week and regularly in the other weeks within the recovery period, Plaintiff Wholey was not compensated for at least approximately 2 hours and 30 minutes and up to at least 3 hours and 45 minutes, approximately, of additional overtime work beyond his scheduled shifts.

31. All HPPTs employed by Defendant are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 because Defendant fails to compensate HPPTs for pre-shift and/or post-shift work. The amount of pre-shift and post-shift overtime work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendant's timekeeping system and through other work and pay records.

### *The Rate at Which Overtime is Paid to Plaintiffs and All Others Similarly Situated*

32. While working as HPPTs during the last three years, Plaintiffs and all others similarly situated have received certain payments for their work, including but not limited to night shift differentials, meal allowance, premium pay for work performed on Saturdays, and premium pay for work performed on Sundays. These payments are made pursuant to Agency-wide policy, and/or collective bargaining agreements, and thus they are paid to Plaintiffs and all other similarly

11

situated. However, Defendant fails to include these payments in the regular rate of pay at which overtime is paid for purposes of calculating overtime payments owed to Plaintiffs.

33. Defendant fails to include premium payments like the foregoing in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, Agency-wide practice. The failure to include these payments in Plaintiffs' regular rate means that when Plaintiffs receive paid overtime for working over 40 hours a week, they are paid at a rate that is below the rate mandated by the FLSA.

34. For example, during the past three years, Plaintiffs Butler and Wholey have earned night shift differentials and/or other premium pay while working as HPPTs during weeks in which they earned overtime compensation and they also worked shifts which covered time between 6:00 pm and 6:00 am. However, on these occasions, including on the weeks set forth above, Defendant did not include these payments in the calculation of their overtime rate during those workweeks.

35. All HPPTs employed by Defendant who receive these payments pursuant to Agency-wide policy and/or collective bargaining agreement are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 because Defendant continues to fail to include these payments in the regular rate of pay upon which the Plaintiffs' overtime rate is based. The precise amount of improperly paid overtime received by each HPPT Plaintiff can be identified through the Defendant's timekeeping system and through other work and pay records.

### *Late Payment of Overtime Worked*

36. In those instances in which Defendant has compensated Plaintiffs and those similarly situated for working hours in excess of 40 hours a week, Defendant is required to approve requests for overtime compensation prior to paying Plaintiffs for that time. Due to delays in

approval of overtime compensation by Defendant and its managers, or for other reasons that are unrelated to Defendant's ability to determine the amount of overtime compensation that is owed to the Plaintiffs, Defendant has failed to pay Plaintiffs for their overtime work more than one pay period after the date that Plaintiffs have been paid for their non-overtime work hours for that week (i.e., more than two pay periods after the overtime was worked).

37. For example, while working as HPPTs during the last three years, Plaintiffs Prunella, Oviedo, Butler, Jarvis, Wholey, as well as other similarly situated HPPTs, received a series of overtime premium payments from Defendant on February 3, 2022, and March 17, 2022, for overtime work that had been performed months and even years earlier. Plaintiffs and those similarly situated had worked overtime shifts, dating back to at least 2020 as well as before, for which they received only partial payment of the overtime pay due under the FLSA. Specifically, they were paid with only their normal, hourly rate (labeled "NYCT Straight Time Overtime" or similar), without the accompanying half-time rate (labeled "NYCT O/T Bonus" or its equivalent). As a result, Plaintiffs and those similarly situated were not paid at the required one and one-half times their regular rate of pay for such hours of work, even though it was work in excess of the overtime threshold of 40-hours in a work week. Despite being on notice of this uncompensated overtime work since approximately 2020 or before, Defendant did not issue payment until February 3, 2022, and March 17, 2022.

38. All HPPTs employed by Defendant are similarly situated and routinely work more than 40 hours in a workweek but are compensated for overtime work in an untimely manner (i.e., more than two pay periods after the overtime was worked). The precise amount of untimely paid overtime received by each HPPT Plaintiff can be identified through the Defendant's timekeeping system and through other work and pay records.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

39. Plaintiffs hereby incorporate by reference paragraphs 1 through 38 in their entirety and restate them herein.

40. At all times material herein, during those workweeks in which Plaintiffs have worked hours in excess of 40 hours a week, they have performed work activities, including but not limited to when they are performing tasks enumerated in Paragraphs 9, 10 and 13, without compensation before the start of their shifts and after the end of their scheduled shifts, all of which is recorded on Defendant's timekeeping system. This pre-shift and post-shift work has caused and continues to cause Plaintiffs to work in excess of 40 hours in a given week. Accordingly, as a result of these pay practices, Defendant has failed to provide Plaintiffs with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

41. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their shifts and after the end of their scheduled shifts.

42. As a result of Defendant's willful and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet

been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody and control of the Defendant and its agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

43. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay overtime compensation as alleged herein.

44. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## **COUNT II**

### **FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY FOR PLAINTIFFS IN VIOLATION OF SECTION 7 OF THE FLSA**

45. Plaintiffs hereby incorporate by reference paragraphs 1 through 44 in their entirety and restate them herein.

46. Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq.*, require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendant has failed to include certain premium payments such as night shift differential pay in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs and of all others similarly situated, resulting in Defendant paying Plaintiffs for overtime work at a rate that is below the rate mandated by the FLSA. Defendant's failure to include night shift differential pay and other

15

forms of additional compensation in Plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

47. As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendant and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

48. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay proper overtime compensation.

49. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT III

**FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR MONTHS AFTER THE OVERTIME WAS WORKED**

50. Plaintiffs hereby incorporate by reference Paragraphs 1 through 49 in their entirety and restate them herein.

51. The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed

except as reasonably necessary to compute the amount owned, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying Plaintiffs' overtime payments for working in excess of 40 hours a week by weeks and in some cases months, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments or due to management withholding such payments until the next budgetary quarter.

52. As this court recently recognized in *Accosta, et al. v. Lorelei Events Grp. Inc., et al.*, No. 7:17-cv-07804-NSR (S.D.N.Y. Jan. 21, 2022), "while 'the Second Circuit has no bright line rule for determining what qualifies as an 'unreasonable' amount of time for an employer to delay paying its employees,' several courts have held that it is a violation of the FLSA to withhold employees overtime such that 'two weeks is an unreasonable amount of time for an employer to delay a paycheck.'" (quoting *Coley v. Vannguard Urban Improvement Ass'n, Inc.,* No. 12-CV-5565 (PKC), 2018 U.S. Dist. LEXIS 50787 (E.D.N.Y. Mar. 29, 2018)). Here, Defendant's failure to pay Plaintiffs' FLSA overtime pay in a timely manner and its withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

53. As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and payroll records for the Plaintiffs are in the exclusive possession, custody and control of Defendant and their public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory

17

provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amount of Defendant's liability can be ascertained.

54. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay overtime compensation as alleged herein.

55. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

(a) Order a complete and accurate accounting of all the compensation to which the Plaintiffs are entitled;

(b) Award Plaintiffs and those similarly situated monetary liquidated damages equal to their unpaid compensation;

(c) Award Plaintiffs and those similarly situated interest on their unpaid compensation;

(d) Award Plaintiffs and those similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

DATE: June 27, 2022                                     Respectfully submitted,
                                                        */s/ Gregory K. McGillivary*

Gregory K. McGillivary (Submitting *Pro Hac Vice*)
Sara Faulman
John W. Stewart (Submitting *Pro Hac Vice*)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
gkm@mselaborlaw.com
slf@mselaborlaw.com
jws@mselaborlaw.com

*/s/ Hope Pordy*
Hope Pordy
Elizabeth Sprotzer
SPIVAK LIPTON, LLP
1040 Avenue of the Americas
20th Floor New York, NY 10018
Phone: (212) 765-2100
hpordy@spivaklipton.com
esprotzer@spivaklipton.com

*Counsel for Plaintiffs*